ELKINS v. SOUTH CAROLINA AND GEORGIA R. R. CO.

1. RAILROADS—NEGLIGENCE—CAUSE OF ACTION—NONSUIT—TRESPASSER—TRACK.—A complaint alleging that a railroad company so negligently constructed its spur track over which it hauled freight to its main line, that the curve thereon would cause the freight to tumble over; that a car loaded with cross-ties pulled over said track with door left open, was entered by a boy fourteen years of age, and of weak mind, but working at a cotton mill; that at the curve the cross-ties fell down and killed the boy; that boy's mother had asked defendant's agents not to let him ride on the cars, does not state a cause of action against defendant for negligence, as the boy was a trespasser.

2. AN EXCEPTION which does not state the point of law involved will not be considered.

Before Hudson, special Judge, Barnwell. Affirmed.

Action by Susan T. Elkins, administratrix of Marion
Varn, against South Carolina and Georgia Railroad Com-
pany. From judgment sustaining demurrer, plaintiff ap-
peals.

*Messrs. Davis & Best* and *R. C. Holman,* for appellant
(no argument fiurnished Reporter).

*Messrs. Joseph W. Barnwell* and *B. L. Abney,* contra,
cite: *Complaint showing contributory negligence on its face
will be dismissed on demurrer:* 58 S. C., 491; 42 S. C., 313.
*At age of fourteen a minor is capable of contributing to his
own injury:* 16 Ency., 2 ed., 267; 88 Penn. St., 35; 10 Ga.,
207; 58 Md., 347; 25 S. C., 24; 27 S. C., 456; 58 S. C., 70.
*Sanity is always presumed:* 16 Ency., 2 ed.. 604; 1 Mill. R.,
216; 24 S. C., 439; 2 McC., 107; 5 N. E. R., 20. *Com-
plaint alleges no negligence of defendant:* 25 S. C., 24; 35
S. C., 381; 21 S. C., 466; 26 S. C., 490; 29 S. C., 96; 22 S.
C., 557; 27 S. C., 71; 51 L. R. A., 645. *Deceased was
trespasser:* 22 S. E. R., 546; 23 S. C., 531; 57 N. Y., 382;
63 S. C., 46.

December 2, 1902. The opinion of the Court was deliv-
ered by

Mr. Justice Pope. The sole question presented by this
appeal is, was the demurrer to the amended complaint herein
properly sustained by the Circuit Judge? The amended
complaint was as follows (omitting the caption and allega-
tions as to incorporation) :

"1. That on the 18th day of April, A. D. 1899, Marion
Varn, an infant under the age of twenty-one years, was
killed on board of one of the cars of the defendant company
under circumstances which will hereinafter be set forth.

"2. That thereafter, to wit: on the 1st day of June, the
plaintiff was duly appointed the administratrix of the estate

of the said Marion Varn, deceased, and is now such administratrix.

"3. That the plaintiff's intestate at the time of his death left no wife or children or father surviving him, but left a mother, the plaintiff herein, who after the death of intestate's father intermarried with one Elkins, and this action is brought by and in the name of said administratrix for her benefit as mother of said intestate."

The plaintiff further alleges:

"4. That the town of Bamberg is a populous place, having a large cotton mill situated near the centre of the business portion thereof, with a side railroad track running, owned and controlled by the defendant above named, from the main line of defendant company's road to said mill.

"5. That defendant company in constructing their said *switch or side track constructed it in such a negligent way that upon the curve it contained a slant,* which slant was so great that loaded cars in passing over the same would *tilt over to such an extent that the load therein contained* would not remain stationary, but was liable to fall and endanger the lives and limbs of those who might happen to be in said car.

"6. That on the 18th day of April, A. D. 1899, the defendant company loaded a box car on said track near said cotton mill *with cross-ties* for the purpose of shipment and pulled them out to the main line, *negligently and carelessly left the said box car door open,* and allowed the plaintiff's intestate, who was a boy of *fourteen years of age and of weak mind,* to ride in said car over the said track and play while it was in progress to its main line.

"7. That plaintiff's intestate had been in the habit of playing in and riding in defendant company's cars from said mill, where he was working, with the full knowledge of the officers and servants in charge of said train (their names being unknown to this plaintiff other *than they were the engineer and conductor in charge of said train,) and while riding as aforesaid on the aforesaid* day and *while passing over said*

*curve, the car tilted, turned or careened to one side, caused by the careless and unskillful construction of said side track of its said railroad, precipitating said ties upon intestate, causing his instant death.*

"8. That the plaintiff had frequently complained to the defendant and requested it not to allow her child (the intestate herein) to play and ride in said car on said side track, the said defendant replying (through the conductor or brakeman in charge of said train, this plaintiff not being able to say which nor does she know their names,) *that they* did *not care if he (intestate) did ride therein and break his neck.*

"9. That the said defendant company *was negligent and careless in leaving said car door open where children are tempted to play and hide;* and the plaintiff further charges that at the time of the death of the intestate, the defendant company allowed him to ride in said car over said dangerous track, and the *conductor, brakeman and engineer in charge* of said train (their names being unknown to the plaintiff) had full knowledge of the intestate's presence in said car, *they pulled said train over said dangerous track, precipitating the cross-ties on the intestate as aforesaid.*

"10. That the plaintiff's intestate *was earning from fifty cents to one dollar per day,* and by reason of his death, plaintiff has been greatly damaged, and by reason of all the facts herein set forth, she has been damaged *ten thousand dollars.*"

The defendant's demurrer was on these grounds: "That the complaint did not state facts sufficient to constitute a cause of action.

"1. Because there is no sufficient allegation of negligence on the part of the South Carolina and Georgia Railroad Company: a. In that the complaint only alleges that the track mentioned in the complaint was liable to endanger the lives of persons riding in loaded cars which are not intended for the carriage of passengers. b. That it is not the duty of a railroad company to keep its cars closed while in motion over its track, under the circumstances alleged in the complaint. c. In that plaintiff's intestate was a trespasser on

the car of defendant, and it is not the duty of the railroad company to guard against trespassers upon its cars.    d. In that neither the conductor nor the engineer is alleged to have had authority to permit said intestate to ride in said car, and they are not presumed to have such authority.    In that it was not the duty of the defendant to guard its freight cars or trains from persons playing thereon.    f. In that the complaint, so far from alleging that the defendant permitted the intestate to ride in the said car, alleges, in effect, that the plaintiff was warned that the intestate was riding thereon at his own risk.

"2. Because the facts as stated in the complaint show that the plaintiff's intestate was guilty of negligence in riding in the loaded freight car of defendant, which negligence was a proximate cause of the injury concurring with negligence of defendant."

As before remarked, the Circuit Judge sustained the demurrer and passed an order dismissing the complaint. From this judgment the plaintiff has appealed upon the following grounds :

"1. Because his Honor erred in sustaining the demurrer and dismissing the complaint, it appearing on the face thereof that the plaintiff's intestate 'was a boy of fourteen years of age and of weak mind,' and was allowed 'to ride in said car over said track while it was in progress to it's main line.'

"2. That the complaint alleges 'that the plaintiff's intestate had been in the habit of playing in and riding in defendant company's cars with full knowledge of the officers and servants in charge of said train;' and it is respectfully submitted that this fact, coupled with the allegation contained in the eighth paragraph of the complaint, in which it is alleged that the plaintiff had warned the defendant against allowing her intestate to ride on said car, alleges negligence in the defendant company, and his Honor erred in not so holding.

"3. It is admitted by the demurrer that the car upon which plaintiff's intestate was killed was a place where children

were tempted to play and ride, and coupled with the further allegation that the track over which said car was drawn was dangerous, shows negligence in the defendant, and his Honor erred in not so holding.

"4. That his Honor erred in dismissing the complaint, when it appears upon the face thereof that the intestate was riding on said train with full knowledge of defendant's servants in charge thereof and impliedly by their consent.

"5. That the allegation of the eighth paragraph of the complaint, 'that the plaintiff had frequently complained to defendant, and requested it not to allow her child to play and ride in said car on said track,' and the answer of defendant's servants, 'that they did not care if he (intestate) did ride therein and break his neck,' shows a wanton and reckless disregard of the safety of the said intestate, who was riding in said car by the implied consent of the defendant, all of which it is respectfully submitted shows negligence, and his Honor erred in dismissing the complaint.

"6. That the allegations of fact contained in the sixth to the ninth paragraphs of the complaint, inclusive, show negligence, and his Honor erred in not so holding."

We have given the matter of this appeal serious reflection. The difficulties which confront us are that by the terms of the complaint viewed under our decisions, the plaintiff's intestate was over fourteen years of age, at which age, under the common law (which has been adopted by this State), he was *capax doli. State* v. *Toney,* 15 S. C., 409; 4 Black Com., 24. It is true, there is an allegation of the complaint that he was of weak mind, but it also alleges that the intestate was an employee of the cotton mill in Bamberg, S. C., earning from fifty cents to a dollar per day. Under such circumstances, the Circuit Judge, in construing the complaint as to its allegations of fact, must have determined that the presumption flowing from the age of fourteen years must be heeded. In addition, the young man was a trespasser upon the railroad's property. It is evident from the allegations of the complaint that the plaintiff

seeks to neutralize the force of this matter by the allegation that this was done with the knowledge and acquiescence of the defendant's servants, the conductor, the engineer and brakeman.    But she failed to note the distinction betwixt such knowledge or acquiescence of such railroad employees on a train not intended or used by the defendant to transport passengers for hire and one intended and used merely to shift cars from a side track to the main line where no element of passengers could possibly enter.    This matter of the defendant's responsibility to minors and adults—also, for that matter, for injuries received by them while trespassing upon the freight trains of defendant and on its track and on its engines—has been fixed by our decisions: *Burns* v. *R. R. Co.,* 63 S. C., 46, 40 S. E. Rep., 1018; *Smalley* v. *Ry. Co.,* 57 S. C., 243, 35 S. E. R., 459; *Darwin* v. *R. R. Co.,* 23 S. C., 531.    In *Burns* v. *R. R. Co., supra,* a lad, who was employed to carry meals from a boarding house to the conductor and engineer, on reaching the train of the defendant, in that case which train was employed to haul lumber and other material to a bridge which was being constructed, was allowed by such employees to ride in the cab of that train. When such train was anchored on the bridge, another train of defendant collided with the material train and injured the lad.    In action brought to recover damages, this Court held: "It will be observed that all the exceptions are intended to show that the Circuit Judge committed reversible error in sustaining the demurrer, whose sole purpose was to show that the complaint failed to state facts sufficient to sustain a cause of action against the defendant.    It must be borne in mind that the complaint does not allege that the plaintiff's injuries received by him while in the cab of defendant, were the result of wantonness or wilfulness on the part of the defendant to him.    It appears there was no contractual relation existing between him, the plaintiff and defendant.    The plaintiff was not an employee of the defendant, he was not a passenger for hire on the defendant's train.    In addition to this, it is not alleged that the defendant used this train, upon

which plaintiff rode, for any other purpose than to carry material to its new bridge over the South Tiger River, and to hoist and lower the said material in its place in its construction of its said bridge. Nor does it appear in the complaint that the conductor and engineer of said material train were allowed or authorized by the defendant railroad company to allow any one of the general public to ride upon said train. Indeed, the allegations of the complaint determined that the plaintiff well knew the object and character of defendant as to said material train. What relation, we ask just here, did this plaintiff sustain to the defendant, if he occupied its cab attached to its material train when he went into its cab by permission of the conductor and engineer of said material train, without the permission or authority of said agents to so invite the plaintiff into defendant's said cab? He was a trespasser. It is true, he could say in defense of such trespass that the same was with knowledge of defendant's agents. But when, as such trespasser, the plaintiff seeks to hold the defendant to answer in damages for any injuries received by him while occupying the cab attached to the defendant's said material train, he must stand or fall upon the question of the conductor's or engineer's power and authority to allow him to so occupy said cab. Was the power to allow the plaintiff to so ride, within the agency existing between the conductor and engineer on the one side and the defendant railway on the other side? There is no allegation in the complaint showing that any such agency existed; on the contrary, by its allegations the complaint when strictly construed denies such agency. Then, if plaintiff was a trespasser upon the defendant's railway train, the only duty the defendant owed him was not to wantonly or wilfully injure him. This doctrine of our law is well established, for in the case of *Darwin* v. *Railroad Co.,* 23 S. C., 540 (55 Am. Rep., 32), it is said: 'But to a traspasser the company owes no such duty. The company is not bound to assume or even expect that trespassers will intrude themselves into dangerous places upon their trains, and is, therefore, under no obli-

gations to provide for their safety by warning them of the danger of their unlawful and reckless acts.' And also in the case of *Smalley* v. *Railroad Co.,* 57 S. C., 251 (35 S. E., 492), the same doctrine is upheld. Any other doctrine, it seems to us, would impose an unnatural care and responsibility upon railroads. They are organized for wise purposes and should respond to the duty they owe the public; but to impose upon them the burden of a *quasi* guardianship of all infant trespassers who ride in cabs or other cars not intended for passengers to occupy, is extending the rule too far."

Those views are supported by the decisions of many other Courts: *Flower* v. *Penn. R. R. Co.,* 69 Penn. St., 210 S. C., 8 Am. Rep., 251; *Eaton* v. *R. R. Co.,* 57 N. Y., 382; *Everhart* v. *R. R. Co.,* 78 Ind., 292; *R. R. Co.* v. *Harrison,* 48 Miss., 112—all of which are cited in *Darwin, supra.* In *Darwin* v. *R. R. Co., supra,* the Court held: "From these cases it will be seen that the fact that it was known to the conductor or other officers in charge of a train that the person injured had, by his own recklessness, placed himself in a dangerous position, does not affect the question, and that such fact cannot have the effect of overcoming the defense of contributory negligence." It may be said that this last citation from the Darwin case related to the defense of contributory negligence upon the trial upon its merits and not upon demurrer. But in *Jarrell* v. *R. R. Co.,* 58 S. C., 495, 36 S. E. R., 910, Mr. Justice Jones, as the organ of the Court, declared: "We may also say that while contributory negligence is ordinarily a matter of defense, yet if the complaint shows contributory negligence by the plaintiff, that would render the complaint demurrable for insufficiency, since it contained allegations that would defeat the cause of action alleged or prevent a recovery thereon." The expression of these views disposes of this appeal, still we will pass upon the grounds of appeal themselves.

*Sixth.* This ground of appeal cannot be considered, under the well established rule of this Court that each exception by its own terms must contain the point of law involved. Here

36—64

there is a reference to the 6th, 7th, 8th and 9th articles of the complaint, without any effort to set out in the exception any view or views, or what view or views, presented by such articles the Circuit Judge erred in construing. This exception is overruled.

*First.* While it did appear on the face of the complaint that the intestate was fourteen years of age and of weak mind, it also appeared there that he was employed in a cotton mill, where he earned from fifty cents to one dollar a day; and also while there was an allegation that the intestate was allowed to ride on said train on the side track from the mill to the main line of the railroad, it also appeared that such train was used to switch cars to the main line and such cars were freight and never passenger cars. This exception cannot be sustained, for the reason that in the complaint it does not appear that the employees who allowed the intestate to ride, had any power to so allow the intestate to ride thereon. This exception is overruled.

*Second.* Stress seems to be laid upon the allegation that the plaintiff warned the engineer and conductor against allowing her son, the intestate, to ride on and play in their cars. Has a parent of a boy just beyond the age of fourteen years no power to control her son? Has it got to that condition in the matter of discipline, that parents must beg and beseech others to do their duty for them? Stress is laid also upon the reply of the railway employees, "he may ride and break his neck, for all we care." This was nothing more than an indignant method of putting a stop to this mother upbraiding them for *her* own folly. Virtually telling her, we have not the time to be following your fourteen year old son and keeping him out of mischief. This case shows that there is a desire on the part of some living parents to convert railways into guardians of their children. The law should end such trifling. But suppose this plaintiff did warn these employees of the defendant not to allow her son to ride on a freight car on the side track in question, how is the defendant responsible therefor? It has nothing to do with trespassers stealing

rides on its freight cars, except it is alleged that the injury was wrought by the defendant to the *intestate* wilfully and purposely, "or we may add, where it was the result of such gross negligence as would imply wantonness or recklessness." This exception is overruled.

*Third.* Now it seems to us that it has come to a wonderful state of things, when the mother of trespassing *intestate* can complain that a railroad must construct its side track over which its freight cars are passed on to the main line as to avoid all possible danger to such trespasser. There is no such law. Persons whose freight are loaded on cars when goods are injured, or passengers on a passenger car which may run on such a side track and injuries are produced thereby, can properly complain, but not trespassers who may place themselves on either of such trains, respectively. This exception is overruled.

*Fourth.* Agents can bind by their conduct in the service of a principal only within the scope of their agency. There is no allegation in this complaint that the principal delegated any such power to these their agents. This exception is overruled.

*Fifth.* We have explained what is the natural and proper inference to be drawn from the language imputed to defendant's servants by the allegations of the complaint. Such language as used by the conductor or engineer was the petulent expression of annoyance felt by them at having the responsibility for this young man thrust upon them by his natural guardian. There is no suggestion that the defendant itself had anything to do with this trespasser. The exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be, and it is hereby, affirmed.

MR. JUSTICE JONES *concurs in the result.*

MR. JUSTICE GARY *dissents.*